

**OPINION**

No. 04-08-00006-CV

Marco **FUNES**,
Appellant

v.

**ELDRIDGE ELECTRIC COMPANY**,
Appellee

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CI-12116
Honorable John D. Gabriel, Jr., Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:      Karen Angelini, Justice
              Phylis J. Speedlin, Justice
              Steven C. Hilbig, Justice

Delivered and Filed:   October 1, 2008

AFFIRMED

In this workers' compensation case, we decide whether a subcontractor established as a matter of law that the exclusive remedy defense under the Texas Workers' Compensation Act (the "Act") protects it from suit brought by an employee of another subcontractor on the same work site. Because we conclude that it does, we affirm the trial court's judgment.

**GENERAL AND PROCEDURAL BACKGROUND**

According to plaintiff's original petition, Marco Funes, an employee of Baker Drywall Co., Inc., sued Eldridge Electric Company for injuries he sustained when he stepped on a pipe negligently left on the floor of a construction site by an Eldridge Electric employee. At the time of the accident, both Baker Drywall and Eldridge Electric were subcontractors for Clayco Construction, Inc., the general contractor on a renovation project involving the HEB Meat Packing Plant in San Antonio, Texas. Eldridge Electric filed a traditional motion for summary judgment on the affirmative defense that the Texas Workers' Compensation Act bars Funes's tort claims. The trial court granted Eldridge Electric's summary judgment and this appeal followed.

## STANDARD OF REVIEW

Appellate courts review summary judgments *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 339 (Tex. App.—San Antonio 2006, pet. denied). When reviewing a motion for summary judgment, we take the nonmovant's evidence as true, indulge every reasonable inference in favor of the nonmovant, and resolve all doubts in favor of the nonmovant. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000).

Under our Rules of Civil Procedure, the trial court must render the judgment sought by the moving party if the summary judgment evidence shows that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law . . . ." TEX. R. CIV. P. 166a(c). Therefore, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). When a defendant moves for summary judgment based on an affirmative defense, like the exclusive remedies provision of the Texas Workers' Compensation Act, the defendant must

-2-

conclusively prove each element of the defense as a matter of law. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). We view the summary judgment proof in the light most favorable to the non-movant, and all doubts as to the existence of a genuine issue of material fact are resolved in the non-movant's favor. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985).

### DISCUSSION

Eldridge Electric sought summary judgment on the basis that Funes's claims are barred under the exclusive remedies provision of the Texas Workers' Compensation Act. TEX. LAB. CODE ANN. § 408.001(a) (Vernon 2006). The purpose of the Act is to provide prompt remuneration to employees who sustain injuries in the course and scope of their employment. *Wingfoot Enter. v. Alvarado*, 111 S.W.3d 134, 142 (Tex. 2003); *Hughes Wood Prod., Inc. v. Wagner*, 18 S.W.3d 202, 206 (Tex. 2000). The Act relieves employees of the burden of proving their employer's negligence, and instead provides timely compensation for injuries sustained on the job. *Wingfoot*, 111 S.W.3d at 142; *Hughes*, 18 S.W.3d at 206-07. In exchange for this prompt recovery, the exclusive remedies provision prohibits an employee from seeking common law remedies from his employer, as well as his employer's agents, servants, and employees, for personal injuries sustained in the course and scope of his employment. *Wingfoot*, 111 S.W.3d at 142; *Hughes*, 18 S.W.3d at 207.

Specifically, the Act provides that, "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . against the employer or an agent or employee of the employer for . . . a work-related injury sustained by the employee." TEX. LAB. CODE ANN. § 408.001(a). Therefore, to invoke the Act's bar, Eldridge Electric was required to establish that (1) Funes sustained a work-related injury, (2) he was covered

by workers' compensation insurance coverage, and (3) and he is now seeking to sue his "employer." *Id.* The parties do not dispute that Funes sustained a work-related injury or that he was paid workers' compensation benefits. The parties do dispute, however, whether Eldridge Electric, as a subcontractor on the same project as Funes's employer, can benefit from the Act's exclusive remedy bar. *See* TEX. LAB. CODE ANN. § 48.001(a), § 406.123 (Vernon 2006).

### *Basis of Eldridge Electric's Summary Judgment Motion*

Eldridge Electric moved for summary judgment on the basis that Clayco, the general contractor, was the statutory employer of all employees on the construction site, including Eldridge Electric and Baker Drywall, by virtue of an Owner Controlled Insurance Program ("OCIP") implemented by the property owner, HEB. In support of its position, Eldridge Electric relied on language found within the Act providing that where a general contractor enters into a written agreement to provide workers' compensation insurance to a subcontractor and its employees, the general contractor is made the "employer" of the subcontractor and its employees for purposes of the Act. *See* TEX. LAB. CODE ANN. § 406.123.[1] Eldridge Electric further argued that Clayco's immunity under the Act extends to all participating subcontractors and their employees, thereby precluding Funes's suit against Eldridge Electric, a subcontractor. *See Etie v. Walsh & Albert Co.*,

---

[1] Section 406.123 of the Texas Labor Code states in relevant part as follows:

>    (a) A general contractor and a subcontractor may enter into a written agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor.
>    . . .
>    (d) If a general contractor . . . elects to provide coverage under Subsection (a) . . . , then, notwithstanding Section 415.006, the actual premiums, based on payroll, that are paid or incurred by the general contractor . . . for the coverage may be deducted from the contract price or other amount owed to the subcontractor . . . by the general contractor . . . .
>    (e) An agreement under this section makes the general contractor the employer of the subcontractor and the subcontractor's employees only for purposes of the workers' compensation laws of this state.

TEX. LAB. CODE ANN. § 406.123 (a), (d), (e) (Vernon 2006).

*Ltd.*, 135 S.W.3d 764, 768 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (holding that the Act's "deemed employer/employee relationship extends throughout all tiers of subcontractors when the general contractor has purchased workers' compensation insurance that covers all of the workers on the site. All such participating employers/subcontractors are thus immune from suit.").

### *Summary Judgment Evidence*

The summary judgment evidence establishes that both Eldridge Electric and Funes's employer, Baker Drywall, were subcontractors employed by Clayco, the general contractor, on a renovation project for HEB. As the property owner, HEB implemented and paid for an OCIP to furnish certain insurance coverage for on-site activities for the project, including workers' compensation and employer's liability insurance. Pursuant to the contract between HEB and Clayco, HEB mandated that Clayco "shall comply and shall require its Subcontractors to comply with the terms [of its OCIP]." The summary judgment record confirms that Clayco did require both Baker Drywall and Eldridge Electric to enroll in the OCIP, which provided workers' compensation insurance coverage for Baker Drywall, Eldridge Electric, and all of their employees. The summary judgment record contains the contract between Clayco and Baker Drywall, which explicitly states under the heading "Scope of Work" and subheading "Inclusions" that "Subcontractor is to be enrolled in the HEB OCIP insurance program prior to start of any work." The record also contains the contract between Clayco and Eldridge Electric which includes a substantially similar provision. Clayco, Eldridge Electric, and Baker Drywall each submitted an enrollment form directly to HEB, and HEB's insurance broker then issued each company its own insurance policy. According to Bobby Hines, Vice President for Eldridge Electric, Clayco deducted the actual cost of the insurance premiums from the agreed contract price due each subcontractor. When Funes was injured at the

work site, he sought and received workers' compensation benefits under the policy issued to his direct employer Baker Drywall.

*Analysis*

Funes argues that Eldridge Electric's summary judgment evidence fails to show application of, and compliance with, section 406.123 of the Act under which Eldridge Electric claims it is entitled to summary judgment. *See* TEX. LAB. CODE ANN. § 406.123. Funes first contends that the statute requires Clayco, the general contractor, to provide coverage directly to the subcontractor. *Id.* § 406.123(a). In support of his interpretation, Funes points to the wording of section 406.123(a) which reads, "[a] general contractor and a subcontractor may enter into a written agreement under which the general contractor ***provides*** workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor." *Id.* (emphasis added). Here, Funes claims the summary judgment evidence fails to establish as a matter of law that Clayco, as the general contractor, directly provided the workers' compensation insurance to the subcontractors. Funes points to the Eldridge Electric Vice President's affidavit as establishing the contrary because it states, "***HEB furnished*** certain insurance coverage, including Workers' Compensation and Employer's Liability Insurance, to various contractors, including Eldridge Electric, for on-site activities for the Renovation Project under HEB's Owner Controlled Insurance Program ("OCIP")." (emphasis added).

In response, Eldridge Electric asserts that Clayco, as the general contractor, contracted with its subcontractors to ensure compliance with the OCIP; therefore, Eldridge Electric argues Clayco was "instrumental" in ***providing*** the coverage because it required Baker Drywall and Eldridge Electric to enroll in the OCIP and deducted the cost of the actual premiums from the contract price

paid to each subcontractor.[2]  Eldridge Electric argues, "[i]n other words, there was an agreement between Clayco and the subcontractors for the provision of workers' compensation insurance.  It does not matter which entity actually set up or paid for the program, the subcontract agreements incorporated and implemented a workers' compensation insurance program for the subcontractors, including Eldridge Electric and Baker Drywall."[3]

### *Did Clayco "provide" Eldridge Electric insurance within the meaning of the Act?*

Whether Clayco "provided" Eldridge Electric with workers' compensation insurance within the meaning of section 406.123(a) of the Act is a question of statutory construction.  When construing statutes, courts must ascertain and give effect to the Legislature's intent as expressed by the language of the statute.  *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008); *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).  Words and phrases must be read in context and construed according to the rules of grammar and common usage.  TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005).  Courts must use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired.  *Id.* § 311.011(b) (Vernon 2005).  Where such does not exist, courts must construe the statute's words according to their plain and common meaning, *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004), unless

---

[2] Eldridge Electric argues the statutory provisions at issue do not require the general contractor to have paid for the coverage, so long as there is a compensation policy in force.  *See Brown v. Aztec Rig Equip., Inc.,* 921 S.W.2d 835, 842 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

[3] On appeal, Eldridge Electric makes an alternative argument that under the authority of *Wingfoot*, because HEB as the premises owner procured coverage for the general contractor and the subcontractors, any negligence suit by the subcontractor's employee is barred as against both the general contractor and any subcontractors.  *See Wingfoot,* 111 S.W.3d at 142; *see also Entergy Gulf States, Inc. v. Summers*, No. 05-0272, 2007 WL 2458027, at *3 (Tex. Aug. 31, 2007, reh'g granted), 50 Tex. Sup. Ct. J. 1140 (holding a premises owner may qualify as a general contractor entitled to the exclusive remedy defense under the Texas Workers' Compensation Act).  Eldridge's argument fails, however, because a summary judgment cannot be affirmed on any ground not specifically presented in the motion for summary judgment.  *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002).  Eldridge's motion for summary judgment was based on the theory that the general contractor Clayco, not the premises owner, had "provided" the insurance.

a contrary intention is apparent from the context, *Taylor v. Firemen's & Policemen's Civil Service Comm'n of City of Lubbock*, 616 S.W.2d 187, 189 (Tex. 1981), or unless such a construction leads to absurd results. *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 356 (Tex. 2004). When the statutory text is unambiguous, courts must adopt the interpretation supported by the statute's plain language unless that interpretation would lead to absurd results. *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 177 (Tex. 2004). Courts may also consider, among other factors, the legislative history, common law or former statutory provisions, and the consequences of a particular construction. TEX. GOV'T CODE ANN. § 311.023(3)-(5) (Vernon 2005). Courts will presume that the Legislature intended a just and reasonable result by enacting the statute. TEX. GOV'T CODE ANN. § 311.021(3) (Vernon 2005).

Here, the Legislature has not prescribed a particular definition of "provides." Further, we detect no apparent intent by the Legislature to stray from the plain and common meaning of the word within the language and context of the statute. Thus, we apply the plain and common meaning of the word "provide" within its reasonable context, which we determine to be "to supply or to make available." *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 948 (1990) (provide: "to supply or make available (something wanted or needed)"). With this definition in mind, we construe subsection 406.123(a) to mean the following: where a general contractor and a subcontractor enter into a written agreement under which the general contractor *supplies or makes available* workers' compensation insurance coverage to the subcontractor and its employees, the general contractor is the employer of the subcontractor and its employees for purposes of the Workers' Compensation Act, as provided under subsection 406.123(e). *See* TEX. LAB. CODE ANN. § 406.123 (a), (e).

To hold to the contrary, that Clayco did *not* provide the insurance, would produce an unjust and unreasonable result. Where, as here, the premises owner has implemented an owner controlled

insurance program and contractually binds its general contractor to require all subcontractors to enroll in the OCIP, to hold that the general contractor did not "provide" the insurance would preclude protection of the general contractor, whom the Legislature clearly intended to protect under subsections 406.123(a) and (e). In that hypothetical, the general contractor would be required to procure a second compensation insurance program in order to qualify under the statute as an "employer" who "provides" insurance, and thereby obtain the Act's protection. *See id.* § 406.123(e). This, however, makes little sense because of its redundancy—the premises owner has already established a program in which all, including the general contractor, are required to enroll, and under which all, including the general contractor, are intended to be protected. The resulting "double coverage" for, in effect, single protection is superfluous, and outside any reasonable intent of the Legislature.

The summary judgment evidence conclusively establishes that Clayco, the general contractor, did supply or make available workers' compensation insurance by mandating through its written agreement with each of its subcontractors that they enroll in the available OCIP. Because Clayco made this insurance available, we hold that Clayco "provided" the insurance to Baker Drywall and Eldridge Electric within the meaning of the statute. TEX. LAB. CODE ANN. § 406.123(a). Because Clayco provided the insurance, Clayco qualifies as the statutory "employer" for purposes of the Act. *Id.* § 406.123(e). Finally, because Clayco qualifies as the statutory employer for its subcontractors, including Baker Drywall and Eldridge Electric and all their employees, the exclusive remedies provision of the Act bars Funes's tort suit against Eldridge Electric. *See Etie*, 135 S.W.3d at 768.

Although its opinion is not binding on us, we note that the Fort Worth Court of Appeals held in a factually similar case, *Rice v. HCBeck, Ltd.*, No. 2-05-239-CV, 2006 WL 908761 (Tex.

App.—Fort Worth Apr. 6, 2006, pet. granted), that "[r]equiring is *not* providing." *Id.* at *4 (emphasis added). In that case, a premises owner contracted with a general contractor to perform construction work on his property. *Id.* at *1. The general contractor hired a subcontractor, whose employee was injured on the job. *Id.* at *1-2. After the injured employee collected under the policy, he sued the general contractor, arguing that the general contractor did not "provide" his insurance. *Id.* at *2. The trial court granted summary judgment to the defendant general contractor, but the appellate court reversed, holding that section 406.123(a) did not apply because the general contractor did not "provide" the insurance. *Id.* at *2, 4. We find *Rice* to be distinguishable from this case. First, in *Rice* the contract between the premises owner and the general contractor required only that all subcontractors *apply* for enrollment in the OCIP, whereas in this case, the HEB contract mandates that Clayco "shall require" its subcontractors to comply with the OCIP. *See id.* at *4. The Clayco contract with its subcontractors, in turn, required them *"to be enrolled"* in the OCIP prior to the start of any work. Secondly, in *Rice*, the premises owner was free to deny the subcontractor's application for enrollment. *Id.* That is not the case here. Furthermore, assuming the premises owner accepted the application in *Rice*, it was still free to terminate the OCIP at any time, in which case the contract required the subcontractor to provide its own "alternate insurance." *Id.* Here, the Clayco contracts require the subcontractors to enroll in HEB's OCIP, and contain no "alternate insurance" provision.

### Did Eldridge Electric Fail to Comply with Subsection 406.123(f)?

Funes also argues that Eldridge Electric's summary judgment evidence fails to show compliance with subsection 406.123(f) of the Act because there is no evidence that Clayco filed a copy of the written agreement with the workers' compensation insurance carrier within ten days of the date the contract was executed. *See* TEX. LAB. CODE ANN. § 406.123(f) (Vernon 2006)

(requiring a general contractor to file a copy of "an *agreement entered into under this section* with the general contractor's workers' compensation insurance carrier not later than the 10th day after the date on which the contract is executed") (emphasis added). Therefore, Funes concludes that Eldridge Electric failed to satisfy an essential element of his affirmative defense. We disagree. We do not read subsection 406.123(f) to be an element of the Act's exclusive remedies bar. *See* TEX. LAB. CODE ANN. § 408.001(a). Rather, failure to submit a copy of the agreement merely constitutes an administrative violation. TEX. LAB. CODE ANN. § 406.123(g) (Vernon 2006). On the other hand, subsections 406.123(a) and (e) elaborate on who may qualify as an "employer," and thus pertain to the essential third element of the affirmative defense. *Id.* § 406.123(a), (e).

## CONCLUSION

We conclude the summary judgment evidence establishes as a matter of law that Clayco, as the general contractor, qualifies as a statutory employer of Baker Drywall, Eldridge Electric and their employees, including Funes, for purposes of the Texas Workers' Compensation Act. *See* TEX. LAB. CODE ANN. § 406.123(a), (e). Because the statutory employer/employee relationship extends to all tiers of subcontractors, Eldridge Electric, as a participating subcontractor is entitled to immunity from suit under the Act; therefore, the exclusive remedies provision of the Act bars Funes's claims against Eldridge Electric. *See id.* § 408.001(a); *see also Etie*, 135 S.W.3d at 768. Accordingly, we affirm the judgment of the trial court.

Phylis J. Speedlin, Justice