Opinion issued December 4, 2008     

















In The
Court of Appeals
For The
First District of Texas




NO. 01-06-01155-CV
____________

HUNT CONSTRUCTION GROUP, INC., DESERT PLAINS, INC., WAY
ENGINEERING, LTD., AND WAY ENGINEERING SERVICE, LTD.,
Appellants

V.

KEVIN KONECNY, Appellee
 

 
 
On Appeal from the 125th Judicial District Court of
Harris County, Texas
Trial Court Cause No. 2004-21023
 






O P I N I O N

          This appeal concerns the exclusive remedy of coverage under the Texas
Workers’ Compensation Act (the “Act”). See Tex. Lab. Code §§ 401.001–451.003
(Vernon 2006 & Supp. 2008). Appellants, Hunt Construction Group, Inc. (“Hunt”),
Desert Plains, Inc. (“Desert Plains”), Way Engineering, Ltd., and Way Engineering
Service, Ltd. (collectively “Way”), appeal from a judgment finding that they
negligently contributed to the injuries of Kevin Konecny, appellee. In two issues,
appellants assert that (1) the Act bars Konecny’s claims because he recovered
workers’ compensation benefits for his injury and those benefits were the exclusive
compensation he could receive, and (2) the evidence is legally insufficient to show
that either Hunt or Way is liable for Konecny’s injury. We conclude that Konecny’s
recovery of workers’ compensation benefits bars any other recovery from appellants. 
We reverse the judgment of the trial court and render judgment in favor of appellants.Background
          The Harris County Houston Sports Authority (“the Sports Authority”) owned
the property where the Houston Multipurpose Arena was constructed. The Arena is
now called the Toyota Center. The Sports Authority hired Hunt as the general
contractor for the project. Hunt subcontracted the ventilation and air conditioning
work to Way, who subcontracted the sheet metal and duct work to Superior Air
Handling Corporation (“Superior”). Konecny was a foreman for Superior. Hunt
subcontracted the application of fireproofing material to Desert Plains.
          The Sports Authority implemented an owner-controlled insurance program
(OCIP) to provide workers’ compensation, general and excess liability, and builders’
risk insurance coverage for the entire Toyota Center project. At the Toyota Center
project, the subcontractors were required to participate in the OCIP, with its
requirements included in every subcontract. The costs for the OCIP were paid through
a credit against each subcontractor’s contract price. 
          According to the OCIP manual, the OCIP was “for the benefit of the Owner,
Construction Manager, contractor and eligible subcontractors of all tiers who have on-site employees.” The manual defined “eligible contractor” to include “all
subcontractors providing direct labor on Houston Multipurpose Arena site . . . . 
Temporary labor services and leasing companies are to be treated as a subcontractor
[sic].” The manual defined “ineligible contractor” to include “consultants, suppliers
(that do not perform subcontract installation), vendors, materials dealers, guard
services, or janitorial services, truckers . . . , and other temporary project services.” 
The list describing ineligible contractors was illustrative, not exclusive.
          The OCIP coverage obtained by the Sports Authority applied to “Hunt, all
employees of Hunt, all subcontractors of Hunt, and all subcontractors of
subcontractors.” The subcontract between Hunt and Way had a credit to pay for the
workers’ compensation coverage under the OCIP. Similarly, the subcontract between
Way and Superior had a credit to pay for the workers’ compensation coverage under
the OCIP. The total contract price for Superior’s work included an $81,000 deduction
for “OCIP deduct.” Way and Superior each subscribed to the workers’ compensation
insurance coverage provided to them through the Sports Authority’s OCIP. 
          The OCIP was described in what was called “Attachment V,” which was
attached to the contract between Hunt and Way and the contract between Hunt and
Desert Plains. The contract between Hunt and Desert Plains required Desert Plains to
“purchase and maintain in force the insurance coverages set forth in Attachment V.” 
The contract between Hunt and Way imposed the same requirement on Way. 
Attachment V stated,
ATTACHMENT V
INSURANCE REQUIREMENTS
OWNER CONTROLLED INSURANCE PROGRAM
Harris County-Houston Sports Authority hereinafter collectively called
the Owner has elected to implement an Owner Controlled Insurance
Program (OCIP) that will provide Workers’ Compensation, Employer’s
Liability, General Liability, Excess Liability and Builder’s Risk for the
Construction Manager, contractors and subcontractors of every tier
providing direct labor to The Houston Multipurpose Arena Project,
hereinafter called The Project. The Owner agrees to pay all premiums
associated with the OCIP including deductibles or self-insured retention
subject to adjustment of the Contract Sum as provided in paragraph
11.1.7 below, unless otherwise stated in the contract documents.
                    . . . .
APPLICABILITY OF THE OWNER CONTROLLED INSURANCE
PROGRAM
Participation in the OCIP is mandatory but not automatic.
Eligible Contractor includes all subcontractors providing direct labor on
the Project site . . . .
. . . .
Unless otherwise directed by The Owner, Contractors/subcontractors not
enrolled in the OCIP shall be required to maintain their own insurance. 
Coverage types and limits are set forth in Article 11 of the General
Conditions of the contractor. Contractor shall promptly furnish The
Owner, or their designated representative, certificates of insurance giving
evidence that all required insurance is in force.
. . . .
CONTRACTOR’S RESPONSIBILITY FOR ITS SUBCONTRACTORS
The Contractor shall require that all subcontractors of every tier shall
complete and submit Form 2, and shall also provide a copy of the
declaration page(s) and premium rate page(s) for each policy, at least ten
(10) days after notice to proceed is granted. TI shall be the Contractor’s
responsibility to submit to The Owner and its designated representative,
changes to the cost of the subcontractor’s insurance resulting from any
adjustments to its program. Contractor shall include all of the provisions
of this Article 11 in every subcontract so that such provisions will be
binding upon each of its subcontractors.
. . . .
CERTIFICATES AND POLICIES
Each Contractor and all tiers of subcontractors will receive a separate
Workers’ Compensation policy.
. . . .
SUBCONTRACTOR PARTICIPATION
Upon execution of a subcontract, the Contractor will immediately report
all new subcontractors to the OCIP Program Administrator for
enrollment in the OCIP. The subcontractor shall incorporate all the
provisions in any subcontractor agreement and shall cause its
subcontractors to cooperate fully with the Owner, the OCIP Program
Administrator and insurance companies for the Project, in the
administration of the OCIP. . . . Contractor shall not permit any
subcontractor to enter the Project Site prior to enrollment in the OCIP
unless they are ineligible to participate in the OCIP and covered by their
own insurance. Failure to do so shall negate the afforded coverage(s).
. . . .
ADMINISTRATION OF THE OCIP
Administration is an integral part of the success of the OCIP. All
Contractors MUST be properly enrolled in the OCIP before access to the
Project site is allowed.
 
          On May 23, 2003, crews from Superior and Desert Plains found themselves
working on the same level of the Toyota Center project. The Superior crew, with
Konecny as foreman, was installing perimeter air ducts while the Desert Plains crew
was spraying fireproofing material on support beams. As the Desert Plains crew
gradually got closer to the Superior crew, so did overspray from the slippery
fireproofing material. For safety reasons, Konecny instructed his crew to clean up and
leave the area. As he was leaving, Konecny slipped on fireproofing overspray, falling
and injuring his back. 
          Konecny filed a workers’ compensation claim and received benefits totaling
$282,321.30. Konecny then initiated this suit. The jury found that comparative
responsibility for Konecny’s workplace injury belonged 20% to Konecny, 20% to
Hunt, 20% to Way Engineering, and 40% to Desert Plains. After reducing the jury
award by the amount of medical expenses paid through workers’ compensation
insurance in accordance with the prior agreement of the parties, the trial court awarded
Konecny $181,342.96 in damages, excluding interest and court costs. 
Workers’ Compensation Coverage
          In their first issue, appellants assert it was error for the trial court to deny their
motion for directed verdict and judgment notwithstanding the verdict. Appellants
contend that Konecny’s suit is barred by the Texas Workers’ Compensation Act
because the Sports Authority and Hunt provided workers’ compensation insurance to
all contractors, subcontractors, and employees working on the Toyota Center project
grounds. 
          A. Standard of Review
          A motion for directed verdict or motion for judgment notwithstanding the
verdict preserves a legal-sufficiency challenge. See Cecil v. Smith, 804 S.W.2d 509,
510–11 (Tex. 1991). To preserve a complaint for review on appeal, a party must
present to the trial court a timely request, motion, or objection that states the specific
grounds for the ruling requested and conforms to the requirements of the Rules of
Procedure and Evidence. See Wal-Mart Stores, Inc. v. McKenzie, 997 S.W.2d 278,
280 (Tex. 1999); Tex. R. App. P. 33.1(a)(1)(A)-(B). The complaining party must also
show that the trial court ruled on the request, objection, or motion “either expressly
or implicitly.” Tex. R. App. P. 33.1(a)(2)(A).
          “The final test for legal sufficiency must always be whether the evidence at trial
would enable reasonable and fair-minded people to reach the verdict under review.” 
City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). Legal-sufficiency review
in the proper light must credit favorable evidence if reasonable jurors could, and
disregard contrary evidence unless reasonable jurors could not. Id. If the evidence
would enable reasonable and fair-minded people to differ in their conclusions, then
jurors must be allowed to do so. Id. at 822. A reviewing court cannot substitute its
judgment for that of the trier-of-fact, so long as the evidence falls within this zone of
reasonable disagreement. Id. Although the reviewing court must consider evidence
in the light most favorable to the verdict, and indulge every reasonable inference that
would support it, if the evidence allows only one inference, neither jurors nor the
reviewing court may disregard it. Id.
          B. Texas Workers’ Compensation Act
          A Texas employer has the option of participating in the workers’ compensation
system. Tex. Lab. Code Ann. § 406.002 (Vernon 2006). If the employer chooses not
to participate, the employer may not assert common-law defenses against an employee
in a negligence suit. Id. § 406.033. If the employer does participate, the employer and
the employer’s employees are protected from an employee’s common-law claims for
injuries or death occurring during the course and scope of the employee’s work
responsibilities, except those claims involving the death of an employee caused by an
employer’s intentional or grossly negligent conduct. Id. § 408.001. “Recovery of
workers’ compensation benefits is the exclusive remedy of an employee covered by
workers’ compensation insurance coverage . . . for the death of or a work-related
injury sustained by the employee.” Id. § 408.001(a). Employees may have more than
one employer within the meaning of the Act, and each employer may raise the
exclusive remedy provision as a bar to the employee’s claims. See Wingfoot Enters.
v. Alvarado, 111 S.W.3d 134, 143 (Tex. 2003); Etie v. Walsh & Albert Co., Ltd., 135
S.W.3d 764, 768 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). 
          For purposes of the Act, a general contractor is deemed the employer of a
subcontractor and the subcontractor’s employees if the general contractor provides,
in accordance with a written agreement, workers’ compensation insurance coverage
to the subcontractor and its employees. Tex. Lab. Code Ann. § 406.123(e) (Vernon
2006). A general contractor is “a person who undertakes to procure the performance
of work or a service, either separately or through the use of subcontractors.” Id. §
406.121(1). A subcontractor is a person who “contracts with a general contractor to
perform all or part of the work or services that the general contractor has undertaken
to perform.” Id. § 406.121(5). Since a general contractor is deemed the employer of
a subcontractor’s employees when the general contractor provides workers’
compensation insurance to them, id. § 406.123(e), the subcontractor’s employees who
do not opt out of the workers’ compensation coverage waive their right to sue the
general contractor for claims not covered by the Act. See id. § 408.001(a). 
          C. The Evidence
          Konecny asserts that appellants presented no evidence at trial to show that they
are entitled to the protections of the Act. Specifically, Konecny claims that sections
referring to workers’ compensation in the contracts between the Sports Authority and
Hunt, Hunt and Way, Hunt and Desert Plains, and Way and Superior are not in
evidence. However, Sue Millican, comptroller of the Sports Authority, did testify to
the agreement between the Sports Authority and Hunt. Millican stated that the Sports
Authority obtained and paid premiums for the OCIP, which provided workers’
compensation coverage to “Hunt, all employees of Hunt, all subcontractors of Hunt,
and all subcontractors.” She also testified that “Hunt was responsible for
implementing the policy.”
          Konecny is correct that the contract sections relating to workers’ compensation
coverage were not presented as evidence for the jury. However, both parties agreed
the issue of workers’ compensation coverage as an exclusive remedy would not be
presented to the jury because the matter of whether the Act barred the negligence suit
was a legal issue for the court. 
          Although the contracts were not before the jury, the relevant sections of the
contracts were presented to the court. Konecny attached unredacted copies of the
contracts between Hunt and Way, Hunt and Desert Plains, and Way and Superior to
its reply to appellants’ motion for summary judgment. In his reply to appellants’
motion for JNOV, Konecny relied on and referred to language in the contracts without
questioning the authenticity of the documents or whether the contracts were in
evidence for the court’s consideration. In rendering its decision on appellants’ motion
for JNOV, “[w]e presume the trial court took judicial notice of its files.” Holley v.
Holley, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied); see
also Attorney Gen. of Tex. v. Duncan, 929 S.W.2d 567, 571 (Tex. App.—Fort Worth
1996, no writ) (“[T]he trial court may take judicial notice of its file at any stage of
proceedings and is presumed to have done so with or without a request from a party.”).
 Because the contracts were presented as evidence for the trial court’s consideration,
and because we assume the trial court took judicial notice of its files, appellants did
present evidence supporting their motion for JNOV.
          D. The Sports Authority
          The parties do not dispute that Hunt was a general contractor for the Toyota
Center project. The parties dispute only whether the Sports Authority was also a
general contractor, in addition to being the owner of the project. However, we do not
reach the merits of that dispute concerning whether the Sports Authority was a general
contractor because that contention was never made to the trial court. On appeal,
appellants contend that the Sports Authority was both the owner and a general
contractor, citing Entergy Gulf States, Inc. v. Summers, in which the Texas Supreme
Court held that “the Labor Code’s definition of ‘general contractor’ does not prohibit
a premises owner who ‘undertakes to procure the performance of work or a service’
from also being a general contractor.” 50 Tex. Sup. Ct. J. 1140, 2007 WL 2458027,
at *2 (Tex. Aug. 31, 2007). Konecny correctly responds that appellants did not
present this argument to the trial court. In its motion for judgment notwithstanding the
verdict, appellants stated that “Hunt Construction provided workers’ compensation
insurance to Plaintiff’s employer—through the contracts and subcontracts with Way
Engineering and Superior Air Handling—that covered Plaintiff at the time of this
accident. Hunt Construction was therefore, for purposes of the Labor Code, Plaintiff’s
employer.” Appellants never asserted at trial that the Sports Authority was a general
contractor. We hold the argument that the Sports Authority was a general contractor
is waived on appeal because it was never made to the trial court. See Tex. R. App. P.
33.1(a)(1)(A)-(B).
 
 
           E. Hunt
          Appellants contend that Hunt, acting as the general contractor, provided
workers’ compensation insurance to all subcontractors and employees on the site, so
all subcontractors and employees became employees of Hunt for purposes of the Act. 
See Tex. Lab. Code Ann. § 406.123(e). Konecny replies that Hunt did not provide
coverage because the Sports Authority, not Hunt, obtained the policy and paid the
premiums. In asserting that the Sports Authority, not Hunt, provided workers’
compensation insurance for the Toyota Center project site, Konecny argues that we
should interpret “provide” to mean “purchase.” The parties dispute, therefore, is over
the meaning of the term “provides,” as that term is used in the Act. 
          “Our primary objective” in construing statutes “is to determine the Legislature’s
intent.” State v. Shumake, 199 S.W.3d 279, 284 (Tex. 2006). If the statute’s language
is not ambiguous, we must seek the Legislature’s intent in the plain meaning of the
words and terms used and not look to extraneous matters for an intent the statute does
not state. Nat’l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000). 
Generally, we accept the ordinary meaning of words used unless the Legislature
provides a specific statutory definition. Cities of Austin, Dallas, Fort Worth &
Hereford v. Sw. Bell Tel. Co., 92 S.W.3d 434, 442 (Tex. 2002). We read every word
in a statute as if it were deliberately chosen and presume that omitted words were
excluded purposely. Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex.
1981). We begin with the plain language of section 406.123(a) before resorting to the
rules of construction because we assume the Legislature said what it meant. Segal v.
Emmes Capital, L.L.C., 155 S.W.3d 267, 286 (Tex. App.—Houston [1st Dist.] 2004,
pet. dism’d). Only if we find that the Act’s plain language is susceptible of two or
more reasonable interpretations will we hold that section 406.123(a) is ambiguous. 
See id. 
          The relevant section states, “A general contractor and a subcontractor may enter
into a written agreement under which the general contractor provides workers’
compensation insurance coverage to the subcontractor and the employees of the
subcontractor.” Tex. Lab. Code Ann. § 406.123(a). Considering each section and
word in connection with chapter 406, we conclude that the statute is unambiguous on
its face. Therefore, we must construe the statute in light of its plain meaning. The
ordinary meaning of the word “provide” is “to supply or make available.” See
Webster’s Ninth New Collegiate Dictionary 948 (1990); see Funes v. Eldridge
Elec. Co., No. 04-08-00006-CV, 2008 WL 4426058, at *4 (Tex. App.—San Antonio
Oct. 1, 2008, no pet. h.).
            Because we must give effect to every word in the statute, we conclude that the
Legislature used the word “provides” intentionally. Had the Legislature intended for
“provide” to mean “purchase,” it could simply have used the word “purchase” instead. 
Alternatively, the Legislature could have defined “provide” to mean “purchase” in the
statute’s definition section. The Legislature chose neither of these options. We
presume that the Legislature deliberately chose “provide” instead of “purchase” in
writing the Act, choosing not to limit the deemed-employee relationship of section
406.123 to only those general contractors who purchase workers’ compensation
insurance. See Funes, 2008 WL 4426058, at *4 (“To hold to the contrary . . . the
general contractor would be required to procure a second compensation insurance
program in order to qualify under the statute as an ‘employer’ who ‘provides’
insurance, and thereby obtain the Act’s protection. . . . The resulting ‘double cover’
for, in effect, single protection is superfluous, and outside any reasonable intent of the
Legislature.”); see also Williams v. Razor Enters., Inc., 70 S.W.3d 274, 277 n.6 (Tex.
App.—San Antonio 2002, no pet.) (“Courts have consistently enforced provisions
permitting an employer to benefit from workers’ compensation coverage even though
the coverage was paid for by a third entity.”); Williams v. Brown & Root, Inc., 947
S.W.2d 673, 678 (Tex. App.—Texarkana 1997, no pet.) (“[T]he statute does not
require the general contractor to ‘pay’ for the insurance. It is incumbent upon the
general contractor only to ‘provide’ the insurance.”).
          Konecny cites Rice in asserting that the contracts in this case merely required
subcontractors to purchase workers’ compensation coverage but did not provide that
coverage. See Rice v. HCBeck, Ltd., No. 02-05-00239-CV, 2006 WL 908761, at *4
(Tex. App.—Fort Worth Apr. 6, 2006, pet. granted) (mem. op.). In Rice, an owner
created an OCIP, an employee was injured on the site, and after recovering workers’
compensation benefits under the OCIP, the employee sued the general contractor for
negligence. Id. at *1–2. The contract between the owner and the general contractor
in Rice only required subcontractors to apply for enrollment in the OCIP. See id. at
*4.
          The Rice decision is distinguishable because the insurance coverage here was
provided by Hunt through the OCIP. See id. Here, the contract language makes clear
that eligible subcontractors are automatically covered by the OCIP. Since all
appellants were eligible subcontractors, they were automatically provided with
workers’ compensation coverage through the OCIP. Unlike in Rice, the general
contractor did not merely require participation in the OCIP but provided insurance
coverage through the OCIP. See id. 
          “[W]e construe subsection 406.123(a) to mean the following: where a general
contractor and a subcontractor enter into a written agreement under which the general
contractor supplies or makes available workers’ compensation insurance coverage to
the subcontractor and its employees, the general contractor is the employer of the
subcontractor and its employees for purposes of the Workers’ Compensation Act, as
provided under subsection 406.123(e).” Funes, 2008 WL 4426058, at *4. Because
Hunt supplied or made available workers’ compensation insurance to Desert Plains,
Way, Superior, and all of their employees, Hunt did “provide” workers’ compensation
insurance. Hunt is therefore considered the employer of Desert Plains, Way, Superior,
and their employees for purposes of the Act. 
          F. The Subcontractors
          Having determined the general contractor, Hunt, provided the OCIP workers’
compensation coverage, we must next determine how that coverage affected the
subcontractor. When a general contractor provides workers’ compensation insurance
that covers all workers on a site, the subcontractors are “deemed employees” and
immune from suit by injured workers. Etie, 135 S.W.3d at 768. In Etie v. Walsh &
Albert Co., Ltd., Clark Construction Group, Inc. entered into a contract with Enron
Corp. for the construction of Enron building 2. Clark subcontracted part of the work
to Way Engineering Company, Inc., who subcontracted part of its work to Walsh &
Albert, Ltd. Clark purchased a workers’ compensation policy covering all
subcontractors and employees working on the Enron building 2 site. Etie, an
employee of Way, was injured on the site by the negligence of a Walsh & Albert
employee. Etie sought and recovered workers’ compensation benefits then sued
Walsh & Albert for negligence. Walsh & Albert moved for, and the trial court
granted, summary judgment. On appeal, we affirmed the trial court’s decision,
holding that Walsh & Albert was immune from suit as a “deemed employee.” We
explained:
          Clark Construction provided workers’ compensation coverage to
all of the employees who worked at the site as part of its contract with
Way Engineering. Way Engineering’s contract with Walsh & Albert
incorporated by reference all of the provisions of the contract between
Clark Construction and Way Engineering. Consequently, Walsh &
Albert and its employees were also covered by the workers’
compensation insurance policy that Clark Construction purchased. 
Therefore, as a general contractor who provided workers’ compensation
coverage, Way Engineering became Walsh & Albert’s “employer” for
purposes of the workers’ compensation statute. Walsh & Albert, and its
employees, became Way Engineering’s “employees.”
 
Id. at 767 (internal citations omitted). 
          As we stated in Etie, the purposes of the Act are best served by deeming
immune from suit all subcontractors and lower-tier subcontractors who are collectively
covered by workers’ compensation insurance. Id. at 768. The Texas legislature’s
purpose in passing the Act was to ensure injured workers could obtain reimbursement
for medical expenses related to workplace injuries without the time, money, and
difficulty of a negligence lawsuit. See Lawrence v. CDB Servs., Inc., 44 S.W.3d 544,
555 (Tex. 2001) (Baker, J., dissenting). Another purpose of the Act is to encourage
employers to participate in workers’ compensation by precluding nonsubscribing
employers from relying on common-law defenses to negligence in defending against
their employees’ personal-injury actions. Kroger Co. v. Keng, 23 S.W.3d 347, 350
(Tex. 2000). 
          Under the terms of the OCIP, coverage applied to contractors as well as
subcontractors who provided direct labor, as each of appellants did here. Although
the OCIP deemed some contractors to be ineligible for coverage under the OCIP, none
of those categories applied to appellants. 
          We conclude that appellants are deemed employees for purposes of the Act. See
Tex. Lab. Code Ann. § 406.123(e). We hold that Konecny’s sole remedy was
workers’ compensation coverage. We sustain the first issue in the appeal and do not
reach the second issue.     

Conclusion
          We reverse the judgment of the trial court and render judgment in favor of
appellants.
 
 
                                                             Elsa Alcala
                                                             Justice
Panel consists of Justices Taft, Keyes, and Alcala.