# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00114-CV

**Robert Cook, Appellant**

**v.**

**White Construction Company, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. D-1-GN-07-000679, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Robert Cook appeals a summary judgment entered in favor of White Construction Company ("White"). Cook was injured while working on a construction project. White was the general contractor on the project, and Cook worked for one of White's subcontractors. After collecting workers' compensation benefits for his injuries, Cook sued White for negligence. White moved for summary judgment on the basis of the exclusive-remedy defense. *See* Tex. Lab. Code Ann. § 408.001(a) (West 2006) ("Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . against the employer . . . for . . . a work-related injury sustained by the employee."). It argued that it could invoke the defense because even though it did not employ Cook directly, it statutorily qualified as Cook's "employer" because it "provided" his workers' compensation insurance. *See id.* § 406.123(a), (e) (West 2006) (general contractor that "provides" workers' compensation insurance to subcontractor's employees qualifies as "employer" of those employees for purposes of workers'

compensation laws). Cook responded by arguing that White did not "provide" his workers' compensation insurance in the statutorily required sense. The trial court granted White's summary-judgment motion. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are largely undisputed. Cook was injured when he fell from a ladder while working on the construction of the Dell/Seton Children's Hospital in Austin. At the time, Cook was an employee of Keystone Structural Concrete, Ltd. ("Keystone"), which was a subcontractor on the construction project. White was the general contractor on the project, and Seton Healthcare Network ("Seton") was the owner of the project.

The contract between White and Seton stated that White "shall purchase and maintain insurance as set forth in Article 12 of the General Conditions" to the contract. Article 12.1.1 of the General Conditions required that White "shall provide Workers' Compensation . . . insurance coverage, as outlined in [Article] 12.2 . . . covering the work activities on the Project." Article 12.2, in turn, required that workers' compensation insurance "shall be provided and maintained throughout the term of the Project" to all "employees performing duties at the Project Site."

Seton agreed to provide an Owner Controlled Insurance Program ("OCIP")[1] for the project under which Seton furnished a single insurance program to cover all contractors and subcontractors involved in the Project. Seton's contract with White required White to enroll all of

---

[1] An OCIP is a program implemented by the owner of a construction site that is "designed to secure insurance, including workers' compensation insurance, at a reasonable price for all workers at the construction site." *Briggs v. Toyota Mfg. of Tex.*, 337 S.W.3d 275, 280 (Tex. App.—San Antonio 2010, no pet.).

its subcontractors, including Keystone, in the OCIP. Seton retained the option to terminate the OCIP at its discretion, but the OCIP stated that if it did so, White "and Subcontractors of all tiers will be expected to provide insurance coverages as required by" Article 12 of the General Conditions to the contract between Seton and White. The OCIP provided that if White and the subcontractors had to obtain insurance coverage outside the OCIP because Seton terminated the OCIP, the costs would be charged back to Seton.

Seton did in fact utilize the OCIP, and White and Keystone enrolled in it. Thus, all of Keystone's employees, including Cook, were covered by workers' compensation insurance when Cook was injured.

After Cook was injured, he sought and received workers' compensation benefits under the OCIP. He then sued White, claiming that its negligence caused his injuries. White moved for summary judgment on the basis of the exclusive-remedy defense. *See id*. § 408.001(a) ("Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . against the employer . . . for . . . a work-related injury sustained by the employee."). It argued that it could invoke the defense because even though it did not employ Cook directly, it statutorily qualified as Cook's "employer" because it "provided" Cook's workers' compensation insurance through its contracts with Seton and Keystone. *See id*. § 406.123(a), (e) (general contractor that "provides" workers' compensation insurance to subcontractor's employees qualifies as "employer" of those employees for purposes of workers' compensation laws). The trial court granted White's summary-judgment motion. Cook appeals.

3

## STANDARD OF REVIEW

We review summary judgments de novo. *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 352 (Tex. 2009). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c).

## DISCUSSION

Cook argues that the trial court erred by granting summary judgment to White because White was not statutorily entitled to invoke the exclusive-remedy defense. *See* Tex. Lab. Code § 408.001(a) (exclusive-remedy defense). Cook correctly notes that because he worked for one of White's subcontractors, White could invoke the exclusive-remedy defense only if it "provided" Cook's workers' compensation insurance. *See id*. § 406.123(a), (e). Cook argues that White did not do so.

In a case remarkably similar to this one, the Texas Supreme Court recently examined what it means for a general contractor to "provide" workers' compensation insurance to a subcontractor's employee. *See generally HCBeck*, 284 S.W.3d 349. In that case, construction worker Charles Rice was injured while working on a construction project. *Id*. at 351. Rice worked for a company called Haley Greer, which was a subcontractor on the construction project. *Id*. FMR Texas Ltd. ("FMR") was the owner of the project, and HCBeck, Ltd. ("HCBeck") was the general contractor in charge of the project. *Id*. at 350. FMR contracted with HCBeck to construct an office campus on FMR's property. *Id*. The contract included an OCIP and required it to be incorporated into all contracts HCBeck entered with subcontractors. *Id*. FMR's contract with HCBeck allowed FMR to terminate or modify the OCIP at any time, but if FMR did so, the contract required HCBeck

4

to secure (at FMR's cost) other workers' compensation insurance for itself and all of its subcontractors. *Id.* at 351.

Pursuant to the terms of the OCIP, FMR purchased workers' compensation insurance to cover the construction project. *Id*. Meanwhile, HCBeck entered into a subcontract with Haley Greer for work on the project. *Id*. The subcontract recognized that the project was covered by FMR's OCIP, and it incorporated the insurance provisions of FMR's contract with HCBeck. *Id*. As mandated by that contract, Haley Greer's subcontract with HCBeck required Haley Greer to enroll in the OCIP. *Id*.

Rice, Haley Greer's employee, was injured while working on the construction project. He applied for and received workers' compensation benefits under the policy issued to Haley Greer pursuant to the OCIP. *Id*. He then sued HCBeck for negligence. *Id*. HCBeck moved for summary judgment on the basis of labor code section 406.123, arguing that it was entitled to rely on the exclusive-remedy defense because it "provided" workers' compensation insurance to Rice through the OCIP. *See id*. Rice argued that HCBeck did not "provide" workers' compensation insurance because (1) FMR, not HCBeck, paid the insurance premiums under the OCIP and (2) Haley Greer would have to provide its own insurance if FMR terminated the OCIP. *See id*.

Rice based the latter argument on a provision of Haley Greer's subcontract with HCBeck that read:

> ALTERNATE INSURANCE: The Owner [FMR] is not required to furnish the OCIP. If [FMR] elects to terminate the OCIP at any time, [FMR] will give subcontractor written notice. In the event of OCIP termination, Subcontractor and lower-tier subcontractors will be required to provide Alternate Insurance. Alternate Insurance is the coverage required by the [FMR/HCBeck] Contract Documents if the OCIP is not in force or does not apply.

*Id*. at 353. The supreme court agreed that, standing alone, this provision seemed to require Haley Greer to obtain its own insurance if the OCIP was terminated, but the court emphasized that the last sentence of the provision required reference to the Alternate Insurance provision of HCBeck's contract with FMR. *See id*. That provision stated: "If [FMR] elects to exclude this Agreement, or any portion thereof, from the OCIP or for any reason [FMR] is unable or unwilling to furnish [the OCIP] . . . the Construction Manager [HCBeck] shall secure such insurance at [FMR's] cost." *Id*. Thus, the court concluded that "[w]hen read together, these provisions outline a contingency plan in the event FMR exercises its contractual right to opt out of its obligation to provide workers' compensation insurance coverage, and that plan charges HCBeck with the responsibility of providing alternate insurance, not Haley Greer." *Id*.

In light of this arrangement, the supreme court held that

> HCBeck "provides" workers' compensation insurance under [labor code section 406.123(a)] because the insurance plan incorporated into both its upstream contract with FMR and its downstream subcontract with Haley Greer included workers' compensation coverage to Haley Greer's employees, and because the contracts specify that HCBeck is ultimately responsible for obtaining alternate workers' compensation insurance in the event FMR terminated the OCIP.

*Id*. at 351-52.

In addition to emphasizing HCBeck's "ultimate responsibility" for ensuring that Haley Greer was insured, the court emphasized that it employs a "decided bias" in favor of finding that workers' compensation coverage exists. *Id*. at 358. It also emphasized that its primary concern was whether HCBeck actually provided workers' compensation insurance, not whether one could imagine a scenario where it might fail to. *Id*. at 354-55, 357, 359 n.4.

6

Cook argues that *HCBeck* does not control this case because Seton's OCIP is distinguishable from FMR's. Specifically, he notes that FMR's OCIP said HCBeck "shall" obtain insurance for Haley Greer if the OCIP lapsed, whereas Seton's OCIP says that "[White] *and Subcontractors . . . will be expected to* provide insurance" if the OCIP lapses. (Emphasis added.) Cook claims that "will be expected to" is "precatory at best," not mandatory like the "shall" in FMR's OCIP.

As the *HCBeck* court emphasized, however, it is important to read OCIP language in context. The full provision that Cook relies on reads as follows:

> SETON HEALTHCARE NETWORK reserves the option not to utilize an OCIP program for this project or to discontinue it. In such a case, the Prime Contractor [White] and Subcontractors of all tiers will be expected to provide insurance coverages as required by the [contract between Seton and White]—General Conditions Article 12.

As noted above, Article 12 required that White "shall provide Workers' Compensation . . . insurance coverage, as outlined in [Article] 12.2 . . . covering the work activities on the Project," and Article 12.2, in turn, required that workers' compensation insurance "shall be provided and maintained throughout the term of the Project" to all "employees performing duties at the Project Site." Taken together, these provisions make clear that White was required to provide worker's compensation insurance to all of its subcontractors' employees, including Cook, for the duration of the project even if Seton terminated the OCIP. Therefore, Seton's OCIP is functionally identical to FMR's, *see id*. at 351-52, which suggests that *HCBeck* does control the outcome here.

There are several additional facts that suggest *HCBeck* controls the outcome here. First, Seton's OCIP stated that if White had to secure alternate insurance because Seton terminated

7

the OCIP, White would charge the cost back to Seton; thus, there was no circumstance in which Keystone would ever pay for its own workers' compensation insurance.[2] *Cf. id*. at 355 ("Haley Greer will never bear the financial obligation of the alternate insurance."). Second, even if one can imagine a scenario in which White might fail to ensure Keystone's workers' compensation coverage, Cook concedes that when he was injured he was in fact covered by (and received benefits under) the OCIP. *Cf. id*. at 359 n.4 ("[W]e look at what did happen, not what might happen."). Finally, to the extent that White's obligation to provide insurance actually was unclear (as Cook contends), we employ a "decided bias" in favor of finding that White did "provide" workers' compensation insurance. *See id*. at 358.

For all these reasons we hold that, under *HCBeck*, White "provided" workers' compensation insurance to Cook pursuant to labor code section 406.123(a). It follows that White was entitled to rely on the exclusive-remedy defense. *See* Tex. Lab. Code § 406.123(e). Thus, the trial court did not err by granting White's motion for summary judgment. *See HCBeck*, 284 S.W.3d at 360. We affirm the judgment.

_____

David Puryear, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed

Filed: August 4, 2011

_____

[2] Cook argues that a provision of the contract between White and Keystone required Keystone to provide its own workers' compensation insurance. That provision, however, expressly concerned "offsite coverage" only. It is therefore irrelevant to this dispute.